**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated, | **Case No. 2:22-cv-696-WSH** |
| Plaintiff, | |
| vs. | |
| PALMCO ENERGY PA, LLC d/b/a INDRA ENERGY, | |
| Defendant. | |

## <u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION</u>

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................ 1

II.    FACTUAL BACKGROUND ...................................................................................... 1

    A.    Plaintiff Accepted Indra's Agreement. ........................................................... 1

    B.    The Agreement Includes Conspicuous Arbitration Terms. ..................................... 2

    C.    Plaintiff Chose Not to Rescind the Agreement Despite Receiving Multiple
        Notices of His Opportunity to Do So............................................................... 3

    D.    Plaintiff Violated His Agreement to Arbitrate by Filing this Suit. ......................... 4

III.   LEGAL STANDARD ................................................................................................. 5

    A.    The FAA Applies and Strongly Favors Arbitration............................................. 5

    B.    The Summary Judgment Standard Applies........................................................ 6

IV.    ARGUMENT ............................................................................................................. 7

    A.    An Arbitration Agreement Exists Between the Parties.......................................... 7

    B.    The Arbitration Terms Are Enforceable and This Dispute Falls Squarely
        Within Their Scope. ..................................................................................... 9

V.     CONCLUSION........................................................................................................ 11

## I.     INTRODUCTION

Defendant PALMco Energy PA, LLC provides electricity, natural gas, and renewable energy options to customers under the "Indra" brand name.  Plaintiff Stewart Abramson enrolled with Indra to receive his electricity and natural gas, agreeing to arbitrate all disputes on a non-class basis.  Indra reminded Plaintiff of his ability to rescind the agreement no less than five times.  But Plaintiff failed to do so.  Plaintiff then violated the plain terms of his agreement with Indra by filing this putative class action in federal court alleging that Indra violated the Telephone Consumer Protection Act ("TCPA").  And even after Indra sent a detailed letter attaching Plaintiff's agreement to arbitrate, Plaintiff refused to honor his agreement to arbitrate.

While Plaintiff's TCPA claim is meritless for many reasons, this is not the correct forum to resolve that claim.  Rather, under binding authority, the Court should grant Indra's motion to compel arbitration and stay this lawsuit pending arbitration, as both of the prerequisites to arbitration are satisfied.  First, Plaintiff agreed to arbitrate by using Indra's services after it provided him two copies of the agreement with an arbitration provision, and Plaintiff chose not to rescind the agreement, despite receiving multiple notices of his opportunity to do so.  As such, Plaintiff is party to a binding arbitration agreement.  Second, this dispute is arbitrable because the arbitration terms are enforceable and Plaintiff's dispute falls squarely within their scope.  The Court should accordingly compel arbitration and stay this litigation.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff Accepted Indra's Agreement.

Indra provides electricity, natural gas, and renewable energy options to millions of residential, commercial, and industrial utility customers across eight states, including Pennsylvania, where Plaintiff resides.  Declaration of Jeff Rodgers ("Rodgers Decl.") ¶ 5.

Plaintiff enrolled by telephone to receive his electricity and natural gas from Indra on April 19, 2022. *Id.* at ¶ 6. His enrollment was independently verified and recorded by a third party. *Id.*; Compl. ¶¶ 31–32. On the recorded call, Plaintiff orally confirmed his choice to switch his electric and gas services to Indra. Rodgers Decl. ¶ 7. Plaintiff was also informed that Indra would send him a contract summary and the terms and conditions of Indra's services, Indra's Pennsylvania Terms of Service and Disclosure Statement Residential & Small Commercial (the "Agreement"), and that he would have three business days from his receipt of the Agreement to rescind it. *Id.* Indra sent Plaintiff two copies of the Agreement on April 21, 2022, by United States mail, one with the enrollment package for his electrical services and another with the enrollment package for his natural gas services. *Id.* at ¶ 8, Exs. A, B. Plaintiff received and paid for seven days of electrical services from Indra from May 3, 2022 through May 10, 2022. *Id.* at ¶ 11. Though he completed his enrollment, Plaintiff did not receive any natural gas services from Indra because the third-party utility company administering the services rejected his account. *Id.*

**B.      The Agreement Includes Conspicuous Arbitration Terms.**

The Agreement includes broad arbitration terms that apply to disputes between Plaintiff and Indra, including the dispute here. *Id.* ¶¶ 8–9, Exs. A at 8, B at 8. The Agreement provides that "IF THERE IS AN ISSUE, CLAIM OR DISPUTE RELATING TO THIS NATURAL GAS & ELECTRIC POWER SUPPLY AGREEMENT . . . IT MUST BE RESOLVED THROUGH FINAL, BINDING ARBITRATION." *Id.* The arbitration terms cover:

> [AN] ISSUE, CLAIM OR DISPUTE INVOLV[ING] A TORT, FRAUD, BREACH OF CONTRACT, MISREPRESENTATION, PRODUCT LIABILITY, NEGLIGENCE, AND VIOLATION OF A STATUTE OR ANY OTHER LEGAL THEORY. INCLUDED ARE ALL ISSUES, CLAIMS, AND DISPUTES ARISING OUT OF OR RELATING [TO] ANY ASPECT OF YOUR PARTICIPATION IN THIS NATURAL GAS & ELECTRIC POWER SUPPLY AGREEMENT AND AUTHORIZATION TO SWITCH GAS SUPPLY SERVICES AND/OR ELECTRIC GENERATION SERVICE TO INDRA WHETHER ARISING DURING OR AFTER YOUR PARTICIPATION IN THIS

2

> NATURAL GAS & ELECTRIC POWER SUPPLY AGREEMENT AND
> AUTHORIZATION TO SWITCH GAS SUPPLY SERVICE AND/OR
> ELECTRIC GENERATION SERVICE TO INDRA.

*Id.*  The Agreement further provides: "ALL ARBITRATIONS SHALL BE CONDUCTED ON AN INDIVIDUAL (AND NOT A CLASS-WIDE) BASIS AND AN ARBITRATOR SHALL HAVE NO AUTHORITY TO AWARD CLASS-WIDE RELIEF."  *Id.*  And the mandatory arbitration clause applies to disputes arising during *and after* Plaintiff's enrollment.  *Id.*

These arbitration terms are not one sided.  They require *both* parties to arbitrate rather than litigate.  And to ensure that customers do not miss these terms, the entire paragraph concerning arbitration is in capital letters and begins with the title "ARBITRATION AGREEMENT, WAIVER OF RIGHT TO SUE IN COURT, AND WAIVER OF CLASS ACTION TO THE FULLEST EXTENT PERMITTED BY APPLICABLE PENNSYLVANIA LAW."  *Id.*

**C.    Plaintiff Chose Not to Rescind the Agreement Despite Receiving Multiple Notices of His Opportunity to Do So.**

Plaintiff received no less than five notices of his deadline to rescind the Agreement.  *Id.* at ¶ 10.  Plaintiff received the first notice during the recorded verification call when he enrolled on April 19, 2022, as explained above.  *Id.* at ¶ 7.  Plaintiff verbally confirmed he understood that he had three business days after his receipt to rescind the Agreement.  *Id.*  Plaintiff then received two copies of the Agreement itself, which both informed Plaintiff that he could rescind it within three business days of his receipt by simply emailing, calling, or sending a letter to Indra.  *Id.* at ¶ 10, Exs. A at 5, B at 5.  His right to rescind is displayed on the first page of the Agreement in bold text and is set off from the surrounding text in its own paragraph, as well.  *Id.*  And Plaintiff's enrollment package for his natural gas services included Indra's "Electric Supplier Contract Summary," and his natural gas enrollment package included Indra's "Natural Gas Supplier Contract Summary" (collectively "Contract Summaries").  The Contract Summaries also both

informed Plaintiff that he could "cancel this Agreement at any time before midnight of the third business day following receipt of this Agreement." *Id.* at ¶ 10, Exs. A at 3, B at 3.

Plaintiff elected not to rescind the Agreement. The Agreements were mailed to him on April 21, 2022[1], so Plaintiff is deemed to have received the Agreement by at least April 25, 2022.[2] But Plaintiff waited a week and a half, until May 4, 2022—after the deadline to rescind had passed and after he had received and benefitted from Indra's electrical services—to cancel his Agreement. *Id.* at ¶ 12. Because Plaintiff missed his deadline to rescind, he did not *rescind* the Agreement and instead merely *cancelled* the Agreement pursuant to the "CANCELLATION" clause. *Id.*, Exs. A at 7, B at 7. Thus, he remains subject to the arbitration provision, which expressly applies to disputes arising after cancellation. *See id.*, Exs. A at 8, B at 8.

## D.    Plaintiff Violated His Agreement to Arbitrate by Filing this Suit.

Despite agreeing to arbitration, Plaintiff nonetheless filed this lawsuit. Indra's counsel sent Plaintiff's counsel a letter on or around July 22, 2022, requesting that Plaintiff comply with his Agreement by seeking to informally resolve this matter and submitting any unresolved dispute to arbitration. Indra's letter provided Plaintiff with a copy of the Agreement and advised that Plaintiff

---

[1]    Indra assumes customers received their enrollment forms at the mailing address they provided unless the enrollment forms are returned to Indra as undeliverable. *Id.* at ¶ 12. If Indra receives returned mail, it uses customer identity verification and fraud prevention services, such as those provided by EKATA and the United States Postal Service, to find a corrected address if possible. *Id.* Indra also notes in the customer's account that the mail was returned, the reason for the returned mail, and whether a corrected address was found. *Id.* There is no record of Plaintiff's enrollment packages being returned to Indra as undeliverable. *Id.*

[2]    Three days after April 21, 2022, fell on a Sunday, so Plaintiff is presumed to have received the Agreements the following Monday, April 25, 2022. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984) (presuming right to sue notice from EEOC was received three days after its issuance, pursuant to Federal Rule of Civil Procedure 6(e) when plaintiff did not have proof otherwise); *Winsor v. Home Depot U.S.A., Inc.*, 743 F. App'x 335, 335–36 (11th Cir. 2018) ("[W]hen the date of receipt is in dispute, this court has applied a presumption of three days for receipt by mail.") (citation omitted); *Roberts v. Genesis Healthcare Corp.*, No. CIV. WDQ-06-2305, 2007 WL 5681609, at *3 (D. Md. Apr. 23, 2007) ("When the date of receipt is unknown or in dispute, the court presumes that service by regular mail is received within three days under Rule 6(e)."), *aff'd*, 280 F. App'x 331 (4th Cir. 2008).

was required to arbitrate this dispute.  Plaintiff declined to comply with the arbitration agreement,

forcing Indra to prepare and file this Motion.

### III.    LEGAL STANDARD

**A.    The FAA Applies and Strongly Favors Arbitration.**

The Federal Arbitration Act governs this matter because Plaintiff's claims brought on

behalf of the nationwide putative class involve the provision of electricity and natural gas across

multiple states, which relates "to interstate commerce."  *See, e.g.*, *Brito v. Major Energy Elec.

Servs.*, 526 F. Supp. 3d 95, 117 (D. Md. 2021) (transaction involved interstate commerce where

plaintiff "filed suit on behalf of a putative nationwide class" and it was "undisputed that [the

defendant] supplie[d] residential electricity in multiple states"); *Amaya v. Spark Energy Gas, LLC*,

2016 WL 1410755, at *3 (N.D. Cal. Apr. 11, 2016) (applying FAA to dispute between natural gas

and electricity utility providers and their customers).[3]

Under the FAA, a party to an arbitration agreement may seek to compel arbitration and

stay further proceedings in federal court.  *Shearson/Am. Exp. v. McMahon*, 107 S. Ct. 2332, 2337

(1987); *R & C Oilfield Servs. v. Am. Wind Transp. Grp.*, 447 F. Supp. 3d 339, 349 (W.D. Pa.

2020).  The FAA, which leaves "no place for the exercise of discretion," "mandates that district

courts shall direct the parties to proceed to arbitration on issues" subject to "an arbitration

agreement."  *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985).  Thus, after a party moves

to compel arbitration, the district court "must refrain from further action" until it determines (1)

---

[3]    The analysis is the same under the FAA and Pennsylvania's Uniform Arbitration Act.
*Marciano v. MONY Life Ins. Co.*, 470 F. Supp. 2d 518, 525 n.9 (E.D. Pa. 2007) (citing *State Farm
Mut. Auto. Ins. Co. v. Coviello*, 233 F.3d 710, 713 n.1 (3d Cir. 2000) ("[T]here is no meaningful
difference between federal and Pennsylvania law when reviewing the scope of an arbitration
clause."); *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 510 n.3 (3d Cir. 1990) ("[T]he federal
Arbitration Act and the Pennsylvania Uniform Arbitration Act, and the case law that has developed
under each, are functionally equivalent as regards the authority of a district court to review an
agreement to arbitrate and to stay or compel arbitration."), *overruled on other grounds by Howsam
v. Dean Witter Reynolds*, 537 U.S. 79, 85 (2002)).

whether a valid agreement to arbitrate disputes exists and, if it does, (2) whether the agreement covers the dispute and is otherwise arbitrable. *Silfee v. Auto. Data Processing, Inc.*, 696 Fed. App'x 576, 577 (3d Cir. 2017) (citation omitted); *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014).

Finally, the FAA embodies a national policy favoring arbitration and creates a presumption of arbitrability. *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."); *Silfee*, 696 Fed. App'x at 577. "The [FAA] was intended to 'revers[e] centuries of judicial hostility to arbitration agreements,' by 'plac[ing] arbitration agreements upon the same footing as other contracts.'" *Shearson*, 107 S. Ct. at 2337. Courts "must resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *CardioNet*, 751 F.3d at 172.

## B. The Summary Judgment Standard Applies.

"When addressing a motion to compel arbitration, this Court must first determine which standard of review to apply: either the motion to dismiss standard under Rule 12 or the motion for summary judgment standard under Rule 56." *Broomall Operating Co. LP v. Eldridge*, 2021 WL 3910723, at *3–4 (E.D. Pa. Aug. 31, 2021) (citing *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 771–72 (3d Cir. 2013). "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Guidotti*, 716 F.3d at 773–74 (internal citations omitted). Where arbitrability is not apparent on the face of the complaint, "the issue should be judged under the Rule 56 standard." *Id.*

Under the Rule 56 standard, compelling arbitration is proper if there are no genuine issues

of material fact and the moving party is entitled to judgment as a matter of law.  *Edwards v. Northampton Cnty.*, 2016 WL 7654661, at *3 (E.D. Pa. Apr. 29, 2016), *aff'd*, 663 F. App'x 132 (3d Cir. 2016).  Where the record taken as a whole could not lead a "reasonable jury" to "return a verdict for the nonmoving party," there is no genuine of material fact.  *Id.*  "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,'" and instead must provide "specific facts showing that there is a genuine issue."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 584, 586–87 (1986).  If a court finds there is a genuine issue of fact, it should order limited discovery on the issue of arbitration and permit the moving party to renew its motion to compel arbitration.  *Gordon v. Kohl's Dep't Stores, Inc.*, 119 F. Supp. 3d 356, 364 (E.D. Pa. 2015); *see also Schwartz v. Comcast Corp.*, 256 F. App'x 515, 518 (3d Cir. 2007).

## IV.    ARGUMENT

The Court should compel arbitration under binding Supreme Court authority because (a) an arbitration agreement exists between the parties, and (b) this dispute falls squarely within the scope of the arbitration terms.

### A.    An Arbitration Agreement Exists Between the Parties.

Under basic principles of contract law, an agreement to arbitrate disputes exists between the parties.  *See supra* at II.A.  "Under Pennsylvania law, contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration."  *Matthews v. Gucci*, 2022 WL 462406, at *6 (E.D. Pa. Feb. 15, 2022).  As the Third Circuit has held, a consumer is bound by an agreement where he "was aware that the services he accepted were being offered pursuant to [an] agreement" and the terms of the Agreement were available to him.  *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 518 (3d Cir. 2007) (compelling arbitration on that basis).  That is precisely what happened here.

Plaintiff knew he enrolled to received Indra's services subject to the terms and conditions

of such service, regardless of his receipt of the Agreement.  *See id.* (in applying Pennsylvania law, holding "[w]hether or not [Plaintiff] received a copy of the subscription agreement, he could not accept services he knew were being tendered on the basis of a subscription agreement without becoming bound by that agreement.") (citation omitted).  Indeed, during his enrollment call, Plaintiff confirmed that (1) he wanted to receive his electricity and gas from Indra, (2) he understood he would receive a copy Indra's terms and conditions of service, and (3) he would have three business days to rescind the terms and conditions upon his receipt.  Rodgers Decl. ¶ 7.

Though Plaintiff accepted the Agreement merely by enrolling subject to the terms and conditions, Indra did, in fact, provide a copy of the Agreement to Plaintiff.  Specifically, Indra mailed Plaintiff two copies of the Agreement with his enrollment packages just two days after his enrollment.  *Id.*, Exs. A at 1, B at 1.  Plaintiff is presumed to have received the Agreements on April 25, 2022, three days after Indra mailed them.  *See Baldwin*, 466 U.S. at 148 n.1 (applying presumption of three days for receipt by mail, pursuant to Federal Rule of Civil Procedure 6(e)'s mail rule).  And both cover letters for Plaintiff's enrollment packages notified him the Agreements contained "the full Terms & Conditions of [his] enrollment with Indra Energy, including a summary outlining the details of the rate plan [he] selected."  Rodgers Decl., Exs. A at 1, B at 1.  Thus, Plaintiff's use and purchase of Indra's services further constituted acceptance of the Agreement, including the arbitration terms.  *Id.* at ¶ 11; *Schwartz*, 256 F. App'x at 518; *Matthews*, 2022 WL 462406, at *8 ("Where, as here, 'both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced.'").[4]

---

[4]    *See also Athon v. Direct Merchs. Bank*, 2007 WL 1100477, at *10–12 (M.D. Ga. Apr. 11, 2007) (mailed arbitration agreement was binding as customer assented to agreement through "continued use of the credit card and continued payments on the account"); *Masters v. Time Warner Cable Inc.*, 920 F. Supp. 2d 766, 770 (W.D. Tex. 2012) ("By continuing to accept services," plaintiff was bound by subscriber agreement, including its arbitration clause).

Plaintiff also manifested his intent to be bound by declining to rescind the Agreement even though he acknowledged his right to rescind and could have easily done so. During his enrollment, Plaintiff confirmed he understood he would have three business days from his receipt of the Agreement to rescind it. Rodgers Decl. ¶ 7. His right to rescind is also conspicuously displayed in bold text both on the first page of the Agreement and in both Contract Summaries. *Id.* at ¶¶ 9–10, Exs. A at 3, 5, B at 3, 5. All he had to do to rescind the Agreement was call or send an email or letter to Indra. *Id.* He chose to do neither, further confirming that he accepted the Agreement, including its arbitration terms. *See Howard v. Ferrellgas Partners*, 92 F. Supp. 3d 1115, 1139 (D. Kan. 2015) (plaintiff's continued acceptance of defendant's goods, services, and equipment after receiving notice of opportunity to reject arbitration agreement constituted plaintiff's assent to arbitration); *see also Keller v. Pfizer, Inc.*, 2018 WL 5841865, at *4 (M.D. Pa. Nov. 8, 2018) (plaintiff accepted employer's arbitration provision by continuing to work after she received it).

**B.      The Arbitration Terms Are Enforceable and This Dispute Falls Squarely Within Their Scope.**

The second prerequisite to arbitration is also satisfied, as the terms are enforceable and this dispute falls within them. Initially, under the FAA and Pennsylvania law, arbitration agreements, like the one at issue here, are presumed to be valid and enforceable. *Shearson*, 482 U.S. at 226 ("Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that would provide grounds for the revocation of any contract, the Arbitration Act provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability."); *In re Est. of Atkinson*, 231 A.3d 891, 900 (Pa. Super. 2020) (noting that arbitration agreements are "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract").

Well-settled principles of contract law also confirm the validity of the arbitration

agreement.  Indra's arbitration terms do not unilaterally benefit Indra—both the customer *and Indra* are required to arbitrate.  *See Matthews*, 2022 WL 462406, at *10 (arbitration clause valid under Pennsylvania law where it contained mutual promise to be bound by rules of arbitration procedure).  And Indra's arbitration terms are not "take-it-or-leave-it," but instead give customers like Plaintiff an opportunity to rescind the Agreement entirely by merely calling or sending an email or letter within three business days of receipt.  Rodgers Decl. ¶¶ 9–10, Exs. A at 5, B at 5; *see Matthews*, 2022 WL 462406, at *10 (under Pennsylvania law, holding arbitration agreement valid where plaintiff received sufficient notice of its terms and meaningful opportunity to opt out).[5]

Moreover, the claims at issue fall squarely within the scope of the arbitration terms.  Here, the arbitration terms govern any "ISSUES, CLAIMS, AND DISPUTES ARISING OUT OF OR RELATING [TO] ANY ASPECT OF [PLAINTIFF'S] PARTICIPATION IN THIS NATURAL GAS & ELECTRIC POWER SUPPLY AGREEMENT AND AUTHORIZATION TO SWITCH GAS SUPPLY SERVICES AND/OR ELECTRIC GENERATION SERVICE TO INDRA" whether based on "VIOLATION OF A STATUTE OR ANY OTHER LEGAL THEORY." Rodgers Decl., Exs. A at 8, B at 8.  Further, the arbitration terms govern regardless of whether the dispute arose "***DURING OR AFTER*** [PLAINTIFF'S] PARTICIPATION IN THIS NATURAL GAS & ELECTRIC POWER SUPPLY AGREEMENT AND AUTHORIZATION TO SWITCH GAS SUPPLY SERVICE AND/OR ELECTRIC GENERATION SERVICE TO INDRA."  *Id.* (emphasis added).  Under binding Third Circuit authority, this broad, all-encompassing language creates a presumption of arbitrability.  *Medtronic AVE Inc. v. Cordis Corp.*, 100 F. App'x 865, 868 (3d Cir. 2004) ("Coupled with our usual strong presumption in favor of arbitrability, a clause

---

[5] The Agreement is governed "**IN ACCORDANCE WITH PENNSYVLANIA LAW**."  Rodgers Decl., Exs. A at 9, B at 9.

providing for the arbitration of all matters 'arising from' an agreement overwhelmingly suggests that a given dispute is arbitrable.") (internal citation omitted).

Given the breadth of Indra's arbitration terms, this dispute plainly falls within its scope. Plaintiff asserts TCPA violations based on calls he allegedly received from Indra concerning Indra's services, including "limited time offer[s]" to get Plaintiff to switch his "electricity and gas" services to Indra.  ECF 1 ¶ 28.  Plaintiff specifically agreed to arbitrate any disputes about arising from his "PARTICIPATION" in the Agreement or his "SWITCH [OF] GAS SUPPLY SERVICE AND/OR ELECTRIC GENERATION SERVICE TO INDRA."  Rodgers Decl., Exs. A at 8, B at 8.  Accordingly, Plaintiff's claims fall directly within the scope of the Agreement. *See Drozdowski v. Citibank, Inc.*, 2016 WL 4544543, at *7–8 (W.D. Tenn. Aug. 31, 2016) (compelling arbitration in putative TCPA class action where consumer alleged calls about payment for defendant's services under agreement).

This is particularly true given the Third Circuit requires arbitration "unless it may be said with *positive assurance* that the arbitration clause is *not susceptible* of an interpretation that covers the asserted dispute."  *Trippe Mfg. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (emphasis added) (quoting *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). Thus, even if there were "*any doubts* concerning the scope of arbitrable issues,"—and there are not here—they must be "resolved in favor of arbitration."  *See Moses H. Cone*, 460 U.S. at 24–25.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the parties' Agreement is enforceable and requires arbitration, and this dispute falls within the scope of its broad arbitration terms.  As such, the Court should compel arbitration and stay this case.

DATED:        August 10, 2022.

/s/ *Ryan D. Watstein*

Ryan D. Watstein (admitted *pro hac vice*)
rwatstein@kcozlaw.com
**KABAT CHAPMAN & OZMER LLP**
171 17th Street NW, Suite 1550
Atlanta, GA 30363
404-400-7300
404-400-7333 (fax)

J. Michael McCague
jmm@gmwpclaw.com
Pennsylvania Bar No. 42993
**GRIFFITH, MCCAGUE & HAPPEL, PC**
408 Cedar Avenue
Pittsburgh, PA  15212
Tel:  412-803-3690
Fax:  412-803-3678

*Counsel for Defendant*
*PALMco Energy PA, LLC d/b/a Indra Energy*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2022, I filed the foregoing document using the Court's

CM/ECF system, which will send a notice of electronic filing to all parties of record.


By:    <u>/s/ *Ryan D. Watstein*</u>
Ryan D. Watstein
*Counsel for Defendant*